Caldwell, J.
The city of Cleveland desired a pumping engine of certain capacity, power and dimensions, to be placed in the Division Street Pumping Station, for use in pumping water, as a part of its water-works system. The city council requested the director of pub ic works to advertise for bids for the same. The director called for bids. In response to his call a number of bids were received. One of these bids, by the Holly Manufacturing Company, was numerically the lowest bid. The Edward P. Allis Company was the next lowest bid that could be considered. The bids were opened. Thereafter, on. January 20th, 1896, the council rejected all the bids; which action is known as “File Number 9520.”
Up to this point in the proceedings, it is agreed that the action of the city officers and council was regular and according to law; and it is claimed on behalf of the plaintiff, that *519 all action on this subject taken after January 20th, 1896, is irregular and without any warrant in law.
On the 27th day of January, 1896, a motion was made to reconsider the action of January 20th, 1896, rejecting all the bids. This was at the next regular meeting after the meeting of January 20th, 1896. ' The plaintiff claims this motion was lost, because a majority of all the members elected to the council did not vote in favor of it. This is •denied by the defendants. There are twenty-two members elected to the city council, and at all these times they were all living and qualified to sit and act in the meetings. The Chair announced the motion as carried. Then a motion was made and carried, accepting the E. P. Allis Company bid. At next council meeting, the clerk of the council had made up the minutes of the meeting of the 27th of January as showing that the motion to reconsider had been carried by a vote of twelve in its favor. Upon a reading of the minutes, the correctness of the same in tlis respect was challenged; but the council, by a vote of sixteen for and five against, voted to approve the journal as read. Thereupon this action was brought on January 31st, 1896, to enjoin the city officers from carrying out the purpose of the council to award the contract to the E. P, Allis Company.
On February 5th, 1896, the plaintiff, in the name of the state, brougbUan action in mandamus to compel Howard H. Burgess, city clerk, to correct the council record of the meeting of January 27th, 1896, so as to make it appear and read that said motion to reconsider had only eleven votes in its favor, instead of twelve votes as the record reads, and to have the record or journal show that the motion was lost.
After these two actions were appealed to this court, an action in|mandamus was commenced in this court by plaintiff on behalf of the state, against the city council and the members' of the council, asking substantially the same relief as is asked against'the clerk in the action against him.
*520 These three cases have been tried together in this court, with the understanding that if the court shall award the writ in either or both of the cases in mandamus, then the court may take its judgment therein as res judicata in determining’the rights of the parties to the injunction case.
These cases present the following questions for the considerations of the court:
1. The right of John D. McClain to bring these actions.
2. Shall the court order the city clerk to correct the council journal.
3. Shall the eourt change, or order the council to change its journal.
4. The right of the city council to reconsider the motion of January 20th, 1896, by which motion it rejected all the bids.
5. Had the council authority to award the contract, after it had voted to reject all bids.
6. Can the contract be awarded to one who is not the lowest bidder?
These questions will be considered in the order in which they are stated.
First. The right of John D. McClain to bring these actions.
The plaintiff, under sec. 1778, Revised Statutes, served notice upon the director of law of the city, requesting him to bring these actions, who did not bring them, and thereupon the plaintiff instituted these proceedings. .He has been placed upon the witness stand to testify as to how he came to bring these actions, and his motives in doing so. From his testimony it appears that he was approached in this matter by the Holly Manufacturing Company, and that the Holly Manufacturing Company has promised to indemnify him against the costs and expenses in prosecuting these actions. .He testifies that he wanted to bring these actions himself, but was not able to undertake *521 the payment of the costs and expenses should be fail in them. He is not a resident of the city of Cleveland, but owns property in the city upon which he pays taxes. Some portions of his testimony tend to show that he was manifesting much interest in this contract and the proceedings to let the same, prior to January 27th, 1896; but it does not appear that he is in any way connected with the Holly Manufacturing Company, further than above stated; and he does testify that his purpose in bringing these actions is to restrain the city of Cleveland from entering into what he regards an unlawful expenditure of money, in that the city of Cleveland is proposing to accept a bid which is not the lowest bid by about ten thousand dollars.
We think, under these facts, that the plaintiff had the right to bring these actions; and that, while his success in them may prove beneficial to the Holly Manufacturing Company, yet we think he is sincere in his claim that his principal object is to restrain the city from entering into an unlawful contract. We therefore hold, that he had a right to bring these actions.
Second. Shall the court order the city clerk to correct the council journal.
Sec. 1755 says:
“The clerk shall attend all the meetings of the council, and make a fair and accurate record of all its proceedings, and of all rules, by-laws, resolutions and ordinances passed by the council, and the same shall be subject to the inspection of all persons interested; and in case of his absence from any meeting, the council shall appoint one of its own number to perform his duties for the time.”
Sec. 1679 provides:
“The council, and when of two branches, each branch, shall be the judge of the election returns, and qualifications of the election returns, and qualifications of its own members; shall determine the rules of its procedure, and keep a *522 journal of its proceedings, and may compel the attendance of absent members in such manner and under such penalties as may by ordinance be prescribed.”
It must be conceded that the record required to be kept by the clerk as provided in sec. 1755, is the same as the journal required to be kept by the council in sec. 1679. Construing these two sections together, it is apparent that the council has the right to determine when the journal truly sets forth its proceedings; and this section gives to the council the right to adopt rules governing its procedures. Under this authority, the council has adopted certain rules of procedure, in which it has provided that at each regular meeting of the council, the president of the council shall cause the journal of the preceding session to be read and disposed of, unless otherwise ordered by the council. These provisions of the law were intended to require the clerk to make an accurate record of all the doings of the council while in session, which record should be presented to the council at its next meeting for examination and for such corrections as the council should determine were necessary, to make the journal fully conform to the action of the council. After the journal has thus been corrected and disposed of by the council, the clerk has no further right to change the same. There is no longer any duty enjoined upon him by the law to correct the journal of the council. Mandamus can be brought against him only to compel him to comply with some plain duty placed upon him by the law. If then, after the journal has been corrected and disposed of by the council, he no longer has any right to change the same, and no longer is under any such legal obligation, then the court will not order him to do what he is not authorized to do by law.
From this it follows that the proceedings against the city clerk are not well founded, and the petition will be dismissed.
*523 Third. Shall the court change, or order the council to change its journal.
'As the basis of this action, it is claimed that when the vote was taken on the 27th day of January, 1896, to reconsider the motion of January 20th; 1896, rejecting all bids, the motion was not carried by a legal vote. There were present in the council at that meeting, twenty-two members. Upon-the roll-call on that motion,eleven members voted in favor of reconsidering and awarding the contract to B. P. Allis and’ Company, and ten voted against the reconsideration. The question to be determined from the vote is in part, if not wholly, whether councilman Jackson voted at all on that motion. The evidence shows that when the roll was called, it was customary for the clerk to look at a councilman when he called his name, and the councilman’s assent was often given by a nod of the head, or his dissent by a shake of the head. The evidence’, we think, shows conclusively that when the roll was called-, councilman Jackson looked at the clerk and nodded his head. The clerk tallied him as voting in favor of the reconsideration. The clerk announced the vote as twelve in favor of reconsideration, and ten against it. At this point in. the proceedings there was much confusion in the council chamber, and one member of the council arose and claimed that two members had not voted. Then it was claimed that councilman Jackson had not voted. Mr. Jackson tried to stop the person who was'making this claim, and told him to let it pass; and when he did this,, he knew that he was tallied as voting in favor of the motion. The matter was pressed, until Mr. Jackson said that he had not voted, and desired to be excused from voting, as he had been sick and absent, and was not very -familiar with the matter under consideration. Thereupon the couacil voted eighteen in favor of excusing him, and two against. There was some talk after this ac *524 tion was had in the council, among the members, as to whether eleven votes in favor of the reconsideration would carry the motion; and it is claimed that some official of the city, who was present in the council chamber, gave it as his opinion that the motion would be carried if only eleven members voted in favor of it. The evidence shows that the journal clerk, who writes up the record for the city clerk, commenced to write the record as soon as possible after the meeting; that this clerk poceeded to write the minutes of the meeting of January 27th, 1896, and had written some portion of them, when the city clerk found that the minutes were being written up as showing that only eleven members voted in favor of the reconsideration. Thereupon he had certain portions of the minutes erased and written up as showing that twelve members voted in favor of the motion; and the journal as thus written, was presented to the city council at its next regular meeting; and when read, a motion was made to strike out the number twelve, and insert number eleven as voting in favor of the motion. Mr. Jackson then said to the.council that he had undoubtedly given the clerk to understand, by the nod of his head when the roll was called, that he voted in favor of the motion. The vote was taken by the council, and after a full consideration of the matter, the council voted sixteen in favor of approving the journal as it was written, and five members voted against it.
The law requires that a majority of all the'members elected to the council are necessary to carry the motion of January 20th, 1896, and the rules of the council provide:
“That any action of the council as tj the passage of an ordinance for the payment c.f claims may be reconsidered by motion if the motion to reconsider be made not later than the,next regular meeting after such action was taken; and also that every member present shall vote on the call of the ‘yeas’ and ‘nays’ unless excused by the unanimous consent of the council.”
*525 The city council is a legislative body, and the question which is here presented, is one which relates to its proceedings as such a body; and it affirmatively appears that the question which is now submitted to this court upon mandamus, was made in the council itself; and upon consideration after hearing evidence on the question of approving the journal, this legislative body determined that its record, as made, was according to the facts. There is no suggestion of fraud, or collusion, or bad faith, and the court is asked to determine whether the council reached the right conclusion or not, in approving its journal. We think that the jurisdiction of the council in this matter is final and conclusive, in the absence of any charge of fraud or bad faith in the matter, and that this court will not inquire into the accuracy of that record any more than it will inquire into the motives which prompted the members of the city council in voting as they did. We think it is not clear by anv means that the council did not determine this question correctly, upon the evidence as it is presented before us. There is no doubt, as Mr, Jackson and the clerk both testify, that he voted in favor of the motion. Whether he intended to so vote or not, it does appear that he did not vote, and it appeared to the council when they approved their journal, .that he intended the clerk to understand that he voted in favor of the motion, and the members had not all voted to excuse him from voting as the rule requires.
' The petition against the council asking the court to change, or order the council to change its journal, is dismissed.
Fourth, The right of the city council to reconsider the motion of January 20th, 1896, by which motion it rejected all the bids.
If the council has not this right, then the motion to reconsider, it is claimed, has no effect; and the action of the council still stands, that all the bids are rejected. Beach on Public Corporations, sec. 866, says:
*526 “The general rule is settled beyond dispute, that action taken by the town meeting may be reconsidered and rescinded at the same meeting, or at any adjourned, or at any other subsequent meeting; and a vote not to reconsider a previous vote taken at the same meeting, does not abridge the power of after-meetings over that vote. Where there is a vote in the negative, the voters may nevertheless, at the same or any other meeting, rescind the vote, and pass measures in the affirmative, or they may take inconsistent action without formally rescinding the vote. If the votes are repugnant, the former is rescinded by implication.”
And in sec. 297:
“It is the undoubted right of corporate bodies, unless clearly restrained by legislative enactment, to reconsider a vote as often as thd_y see fit, or to rescind the same, provided vested rights are not disturbed, up to a time when by a conclusive vote, accepted as such by itself, a determination has been reached. They may adopt rules as to the time when reconsideration may be moved, and it is not necessary to the validity of the resolution to reconsider, that it should be moved by one who voted originally with the majority; and a board of aldermen, which has indefinitely postponed action on a resolution of the common council, can afterwards rescind that action, and pass the resolution.”
There are a large number of authorities cited in the note that fully sustain the text of the author.
To the same effect is sec. 290 in Dillon on Municipal Corporations:
“At any time before the rights of third persons have attached, a council or ether corporate body may, if consistent with its charter and rules of action, rescind previous votes and orders. ’ ’
The rule of the council governing the matter of reconsid-eration has already been given. The rule, however, has some limitations:
“If a vote of the town has given a cause of action against it, no subsequent proceedings can impair or dispute this vested right; and it is generally true that rights of third *527 parties resting on a vote, cannot be divested by reconsideration.”
Another exception to the general rule is:
“If a vote has accomplished its purpose, and wrought out the intented result, its force is spent, and an attempt to reconsider it is futile.”
These authorities seem to establish the right of the city council to rescind the motion of January 20th, 1896, unless it shall appear that under the motion of January 20th, 1896, there had become vested rights, or that that motion so fully disposed of the entire subject matter, that the council could take no further action upon the same.
' Had the city council awarded this contract to the Holly Manufacturing Company, instead of rejecting all bids, then we can see how the Holly Manufacturing Company would have had, under that vote, a vested right; but it is equally clear that, under the vote to reject all bids, the Holly Manufacturing Company obtained no vested right. The motion to reject all bids, did not dispose of the matter, before the council so fully that it could not reconsider. There is no such limitation in the law, and authorities, so far as we have seen any upon the subject, are that the council, after rejecting all bids, may reconsider that vote, and award the contract; or, if the contract is awarded to n bidd er, and he ref fuses or fails to enter into the same, the council may thereafter award the contract to another bidder. In Ross v. Stockhouse, 114 Ind. 200, it is held that
“A board which has rejected all bids received in pursuance of due notice of the letting of a contract for a street improvement, may at a subsequept meeting,' without a re-advertising for bids, reconsider the vote of rejection and .award the contract to one of the original bidders.”
In Kinsell v. The City of Auburn, 7 N. Y. Supplement 817, the court decided:
“The common council may reject any or all of the pro *528 posáis, if tbey shall deem it for the interest of the city; and if either of said proposals is deemed favorable to the city, the common council may direct the mayor and city clerk to contract with the party whose proposal is accepted.”
In this case, after bids for constructing a sewer were opened, and the council passed a resolution awarding the contract to the lowest bidder, he failed to enter into the contract, and .the council at the next meeting reconsidered the motion awarding the contract, and awarded the contract to the next¿lowest®bidder. The court held-that the proceeding was legal.
It is apparent™then, from the very nature of the proceeding, and from the authorities, that the council had authority to aawrd the contract after it had voted to reject all bids.
Sixth. Can the contract be awarded to one who is not the lowest bidder?
This question involves an examination of the statutes, to determine under which provision this contract was let. See. 76 of the Federal Plan Law, points out how the city is to proceed in case of an improvement or repair or purchase of supplies, where the cost exceeds five hundred dollars; and paragraph 5 of that section provides:
‘‘If the work bid for embraces both labor and material, they shall be separately stated, with the price thereof.”
Paragraph 6 reads:
‘‘None but the lowest and best responsible bid shall be accepted when such bids are for labor and material separately, but the council may, at its discretion, reject all the bids, or accept any bid which may be the lowest aggregate cost, when recommended by the board of control.”
This provision of paragraph 6 seems to refer entirely to cases where labor and material may be bid for separately; that separate bids may be tendered and accepted when they are the lowest and best responsible bide; but if the fractional bids are not lower than any one bid which includes all *529 the fractional parts, or is the aggregate of all of them, then the aggregate bid may be accepted.
Sec. 794, applies to cities and towns and villages among other corporations and boards, but this section makes it imperative that the officer, board or authority calling for the bid, shall require separate and distinct proposals to be made for furnishing the materials for doing the work, or both, in their or his discretion, for each separate and distinct trade or kind of mechanical labor or employment, or business necessary to be used in making such public improvement. In this respect, the statute is similar to the one in the Federal Plan Law. It would seem from the notice inviting the bids, that the city was not proceeding, as to the character of bids, under either of these provisions of law. The notice fully provides for a pumping engine, and that all steam pipes, fixtures, water pipes, mains, valves and labor are to be furnished with the pump. The bid called for is a unit, and gives no opportunity to anyone to bid separately on material or labor or anything else called for in the notice. The Federal Plan Law places the waterworks of the city under the management of the director of public works of the city, who takes the place of the trustees or board under the provisions as provided for in the general law of the state pertaining to waterworks; and any authority in the law vested in the trustees or. board, is now vested in such director.
Sec. 2415 provides:
“The trustees or boird shall be authorized to ,make contracts for the building and machinery of waterworks, buildings, reservoirs and the enlargement and repair thereof,and the manufacture and laying down of pipe, and the furnishing and supplying with connections of necessary fire hydrants for fire department purposes, and keeping the same in repair, and for all other necessary' purposes to the full and efficient management and construction of waterworks.’’
Sec. 2419 provides:
*530 “The trustees or board, before entering into any contract for work to be done, the estimated cost of which exceeds five hundred dollars, shall cause at least two weeks notice to be given in one or more daily newspapers of general circulation in the corporation, that proposals will be. received by the trustees for the performing of the work specified in such notice; and the trustees shall contract with the lowest bidder, if in their opinion he can be depended on to do the work with ability, promptness and fidelity; and if such be not the case, the trustees may award the contract to he next lowest bidder, or decline to contract, and advertise again.”
The notice seems in all its parts and purposes to have been made under this section of the law. It is not made to harmonize with the purpose and intent of the provisions of the Federal Plan Law, nor of the general provisions of the law as found in section 794; nor do the bids in any manner purport to be made under those sections; and it is evident that those sections were not intended to apply to a matter of this kind. And sec. 2419 is one under which the city authorities had a right to call for bids. They have called for bids under this section. The bids have been made to conform to these provisions, and it is under-this section that the authority of the city to award the contract is to be determined. This section gives to the city an option to award the contract to the lowest bidder, if in their opinion he can be depended upon to do the work with ability, promptness and fidelity; and if such be not the case, then they may award it to the next lowest bidder, or decline to contract. This section places this option entirely upon the opinion of the city authority, and the court certainly cannot interfere with that opinion.
In this case, proof has been introduced as to the character of the bidders, and it is claimed that the Holly Company is fully capable of doing this work with ability,promptness and fidelity. There is no claim here that the eity is in any manner acting fraudulently or by way of collusion to *531 •evade the intent of this statute; and for aught that appears in the case, it is acting honestly, and with an opinion that has to it some foundation. The city under this statute had ihe right to reject the Holly bid, and accept the bid of the Allis Company. The duty and discretion of deciding this question is imposed upon the city authorities, and not upon •ns. 10 C. C. R., page 74,
The plaintiff’s petition for an injunction is dismissed.